## FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**STACY R. ULIANA**
Bargersville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| THOMAS W. OSTER, II, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )    No. 84A05-1208-CR-437 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable David R. Bolk, Judge
Cause No. 84D03-1201-FC-220

**August 9, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

At approximately 7:00 p.m. on January 18, 2012, Bill Wolfe was in Large Ink, the business in which he had his art studio, when he heard two bangs and glass shattering in the rear of the building. Wolfe stepped outside and called 911. When police arrived, entered the front of Large Ink, proceeded toward the rear, and announced themselves, they heard a crash. A glass panel in the door with access to an alley had been broken, and a mobile telephone and brick were found near the door. Appellant-Defendant William Oster, II was soon apprehended nearby. Oster bore fresh abrasions and cuts and was carrying a pouch containing two screwdrivers and a pair of pliers. It was later determined that the mobile telephone found near the door contained pictures of Oster.

The State ultimately charged Oster with Class C felony burglary, Class A misdemeanor criminal mischief, and with being a habitual offender. Following a bifurcated trial, a jury found Oster guilty as charged and to be a habitual offender. The trial court sentenced Oster to seven years of incarceration for burglary and one year for criminal mischief, to be served concurrently, with that sentenced enhanced by eleven years by virtue of the habitual offender finding. Oster contends that the State failed to produce sufficient evidence to sustain his burglary conviction or the habitual offender finding, that his convictions violate prohibitions against double jeopardy, and that the trial court committed fundamental error in instructing the jury. While the State concedes that Oster's convictions may not both stand, we conclude that Oster's other claims are without merit. Consequently, we affirm in part, reverse in part, and remand with instructions.

**FACTS AND PROCEDURAL HISTORY**

2

In January of 2012, Wolfe, an artist, painter, and sculptor, was renting studio space in Large Ink, a printing and sign fabrication shop in Terre Haute. The Large Ink building is located at 635 Ohio Street and had access to Ohio Street and an alleyway behind. At approximately 7:00 p.m. on January 18, 2012, Wolfe and Todd Stokes were at Large Ink and "heard the back door tug from the alley way[.]" Tr. p. 304. Wolfe left through the front door and drove his truck around to the alleyway behind Large Ink but did not see anything amiss. When Wolfe drove back around to the front of Large Ink, he noticed a man wearing grey camouflage pants and a stocking cap walking west on Ohio Street. Wolfe drove to a gasoline station approximately three blocks away and then decided to "make one … more pass over at the, the shop." Tr. p. 306. When Wolfe reentered Large Ink through the Ohio Street door, he heard two "bangs" and then glass shattering in the rear. Tr. p. 306. Wolfe stepped back outside, called 911, and began to walk to the alleyway behind Large Ink.

Terre Haute Police Officer Daniel Armentrout and Officer Toney responded and entered Large Ink through the front door. As the officers entered Large Ink, they could hear someone "kicking or pulling" on a metal door that led to a back room, which room had access to the alleyway. Tr. p. 380. When Officer Armentrout yelled "Police," he "hear[d] footsteps run into a door, and a loud crash." Tr. p. 381. The officers opened the metal door and noticed that the door providing access to the alleyway had a window broken out of it. Officer Armentrout looked out of the window and saw a figure running south down an alleyway.

Meanwhile, Wolfe had walked to the alleyway behind Large Ink and was still on the telephone with police dispatch, who informed him that "there's an officer walking in your front door right now." Tr. p. 308. Soon thereafter, Wolfe turned a corner and saw a man wearing a dark stocking cap and dark blue jacket heading south toward Walnut Street, an east-west street south of Ohio Street. Wolfe ran over to Walnut Street and saw a man wearing camouflage pants riding a bicycle west on Walnut Street. When asked at trial if the man wearing camouflage pants was the same person he had seen in the alleyway, Wolfe responded, "I don't think, I don't think it was the same guy, no." Tr. p. 310.

A police officer soon apprehended Oster "coming out the alley" onto Walnut Street. Tr. p. 386. Oster bore fresh abrasions on the back of his head, right shin, lower left back, left shin, right midsection, and forehead. Oster was also in possession of a pouch that contained Phillips-head and flat-head screwdrivers and a pair of pliers. When Wolfe and police returned to the alleyway behind Large Ink, they found a brick and mobile telephone on the ground near the door. The mobile telephone contained several photographs of Oster.

The State ultimately charged Oster with Class C felony burglary, Class A misdemeanor criminal mischief, and with being a habitual offender. In preliminary instructions, the trial court instructed the jury, in part, as follows:

> The crime of Burglary, a Class C Felony, as charged in Count One (1) is defined by law as follows: A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits Burglary, a Class C Felony. Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt.

4

> One (1), the Defendant Thomas William Oster II; two (2) knowingly; three (3), broke and entered; four (4), the building or structure of Large Ink, L.L.C.; five (5), with intent to commit a felony, Theft, in it, by exerting unauthorized control over the property of Large Ink, L.L.C.

Tr. p. 267. The trial court's final instruction on the elements of Class C felony burglary was, for all intents and purposes, identical to its preliminary instruction. Following the guilt phase of Oster's trial, the jury found him guilty of Class C felony burglary and Class A misdemeanor criminal mischief.

During the habitual offender phase of Oster's bifurcated trial, the State presented testimony from former Clay County adult probation officer Steven Bell and Brandon Loveless from the Indiana Parole Division. Bell supervised Oster when Oster was on probation in Clay County and knew him. Bell identified several certified documents establishing that Oster had several prior unrelated felony convictions in Clay County and one in Parke County. Loveless testified that he had supervised Oster and was familiar with his criminal history. Loveless testified that Oster was the same person named in the certified documents admitted into evidence by the State during Bell's testimony. The jury found Oster to be a habitual offender. The trial court sentenced Oster to seven years of incarceration for burglary and one year for criminal mischief, both sentences to be served concurrently, and enhanced Oster's sentence by eleven years by virtue of his habitual offender status.

### DISCUSSION AND DECISION

#### I. Whether the State Produced Sufficient Evidence to Sustain Oster's Burglary Conviction

5

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* We consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.* We affirm the conviction unless no reasonable fact-finder could find that the elements of the crime were proven beyond a reasonable doubt. *Id.*

Oster contends that the State failed to produce evidence sufficient to sustain his burglary conviction, specifically, that it failed to establish his intent to commit theft within Large Ink. In its latest discussion on the topic of proving intent in the burglary context, the Indiana Supreme Court wrote:

> Burglary is the breaking and entering of the building or structure of another person with the intent to commit a specific felony therein. Ind. Code § 35-43-2-1; *Gilliam v. State*, 508 N.E.2d 1270, 1270 (Ind. 1987); *Yeagley v. State*, 467 N.E.2d 730, 736 (Ind. 1984). ….
> "Burglars rarely announce their intentions at the moment of entry," *Gilliam*, 508 N.E.2d at 1271, and indeed many times there is no one around to hear them even if they were to do so. Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering "may be inferred from the circumstances." *Id.*; *see also Hampton v. State*, 961 N.E.2d 480, 487 (Ind. 2012) ("[T]he mens rea element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof."); *Kondrup v. State*, 250 Ind. 320, 323-24, 235 N.E.2d 703, 705 (1968) ("[T]he intent to commit a felony may be inferred from the circumstances which legitimately permit it."). "Circumstantial evidence alone is sufficient to sustain a burglary conviction." *Kidd* [*v. State*], 530 N.E.2d [287, 287 (Ind. 1988)]; *accord Cash v. State*, 557 N.E.2d 1023, 1025 (Ind. 1990) ("A conviction for burglary may be sustained by circumstantial evidence alone.").
> Evidence of intent "need not be insurmountable," *Gilliam*, 508 N.E.2d at 1271, but there must be a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent

6

to commit a felony[.]" *Freshwater* [*v. State*], 853 N.E.2d [941, 944 (Ind. 2006)]. The evidentiary inference pointing to the defendant's intent must be separate from the inference of the defendant's breaking and entering. *Justice* [*v. State*], 530 N.E.2d [295 , 297 (Ind. 1988)]; *Kondrup*, 250 Ind. at 323, 235 N.E.2d at 705. The inference of intent must not derive from or be supported by the inference of breaking and entering. In other words, the evidence must support each inference—felonious intent and breaking and entering—independently, and neither inference should rely on the other for support. This is not to say, however, that the same piece of evidence cannot support both inferences.

Requiring independent evidence of intent is necessary to maintain the distinction between burglary and other criminal offenses involving property invasion such as criminal trespass, Ind. Code § 35-43-2-2, or residential entry, Ind. Code § 35-43-2-1.5. Permitting the felonious intent element to be inferred from the inference of breaking and entering would render the intent element meaningless and read it out of the statute. *See Faulkner v. State*, 260 Ind. 82, 87, 292 N.E.2d 594, 596 (1973) ("If the Legislature had intended to punish a breaking and entry by itself, as we have here, they would not have added the second element of specific intent. A reading of the statute clearly indicates that both elements are included.").

*Baker v. State*, 968 N.E.2d 227, 229-30 (Ind. 2012) (footnotes omitted).

We conclude that the State produced sufficient evidence to prove that Oster broke and entered Large Ink with the intent to commit theft within. First, Oster was caught with burglary tools, namely one Phillips-head screwdriver, one flat-head screwdriver, and a pair of pliers, tools that would be very helpful if one wished to gain access to cash registers, cash boxes, desks, drawers, etc. It is worth noting that there is evidence that Oster used a brick to break into Large Ink and no evidence whatsoever that Oster used his tools to do so. In other words, his possession of tools is evidence that supports an inference of intent to commit theft but does not derive from evidence of the breaking and entering. This fact neatly distinguishes this case from *Freshwater*, in which there was

7

evidence that the screwdriver in Freshwater's possession when he was apprehended had been used during the break-in. *Freshwater*, 853 N.E.2d at 942.

Second, the very nature of the structure into which Oster broke—a retail business—is also independent evidence of his intent to commit theft. Common sense dictates that when one breaks into a retail business after-hours, it is more likely done with the intent to commit theft than, say, if one breaks into an empty warehouse. Retail businesses are likely to contain cash and/or easily-fenced items, such as computers. Third, the record severely undercuts the notion that Oster might have been seeking shelter, another at least plausible reason one might break into a structure. Oster was a resident of the Lighthouse Mission in Terre Haute at the time of the break-in and so would have had no need for alternate shelter. Oster's possession of burglary tools, the nature of the structure into which he broke, and the absence of any indication that he broke into Large Ink for a reason other than theft are independent evidentiary facts sufficient to sustain his burglary conviction.

## II. Whether the State Produced Sufficient Evidence to Sustain the Finding that Oster Is a Habitual Offender

Oster contends that the State failed to establish that he is a habitual offender. Specifically, Oster contends that the certified documents are confusing because they list several different, albeit similar, names; Bell was insufficiently certain that Oster was the same person he had dealt with in the past; and Loveless had not supervised Oster in relation to any of his alleged prior convictions. "[T]he state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the

8

rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-2-8(a). "The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense." Ind. Code § 35-50-2-8(h).

> Certified copies of judgments or commitments containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies. *Schlomer v. State*, 580 N.E.2d 950, 958 (Ind. 1991) (citing *Andrews v. State*, 536 N.E.2d 507 (Ind. 1989)). While there must be supporting evidence to identify the defendant as the person named in the documents, the evidence may be circumstantial. *Id*.; *see also Coker v. State*, 455 N.E.2d 319, 322 (Ind. 1983). If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was a defendant who was convicted of the prior felony, then a sufficient connection has been shown. *Pointer v. State*, 499 N.E.2d 1087, 1089 (Ind. 1986).

*Hernandez v. State*, 716 N.E.2d 948, 953 (Ind. 1999).

Oster notes that the documents produced by the State listed the perpetrator, variously, as "William Oster," "Thomas W. Oster," "Thomas W. Oster, II," "Thomas William Oster, II," and "Thomas Oster" and argues that there is insufficient evidence to prove that the same person committed all of the prior crimes or that he was that person. We disagree. The names listed on the documents are sufficiently similar to support an inference that they refer to the same person. More importantly, Loveless identified Oster in court and testified that he was familiar with Oster and Oster's criminal record; that reviewing Oster's criminal record was part of his supervision of him while on parole; and that, despite the slight naming differences, Oster was in fact the person referred to in all of the State's certified documentation. *See, e.g.*, *Hernandez*, 716 N.E.2d at 953

9

(concluding that testimony from prison officer that he was familiar with defendant and contents of his offender packet was sufficient to establish that defendant was person named in certified documentation of prior unrelated convictions). Oster's argument in this regard is nothing more than an invitation to reweigh the evidence, which we will not do. The State produced sufficient evidence to sustain a finding that Oster is a habitual offender.

### III. Whether the Trial Court Committed Fundamental Error in Instructing the Jury

The trial court failed to instruct the jury that Oster, in order to have had the intent to commit burglary as charged, must have had the intent to deprive another person of any part of the value or use of that person's property, which is an element of theft. *See* Ind. Code § 35-43-4-2(a). While acknowledging that he did not preserve the issue below, Oster contends that the trial court committed fundamental error in this regard. Put another way, Oster argues that the trial court committed fundamental error in failing to properly instruct the jury on *mens rea*.

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *See, e.g.*, *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002); *Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

10

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

We conclude that the trial court's failure to instruct the jury on *mens rea* did not amount to fundamental error in this case. The overriding issue at trial was identity, not intent, and the Indiana Supreme Court has held that failing to properly instruct the jury on *mens rea* is not fundamental error when intent is not an issue at trial. *See, e.g.*, *Swallows v. State*, 674 N.E.2d 1317, 1318 (Ind. 1996) (concluding that there was no fundamental error in failing to instruct on the specific intent to kill where "[t]he intent of the Defendant was not in issue, as the theory of defense revolved around proving the State could not show 'beyond a reasonable doubt that my client, Mitch Swallows, is the one who had done all of these things'").

A review of the trial transcript reveals that Oster focused all of his trial energy on attacking evidence that he was the person who broke into Large Ink. Wolfe could not identify Oster as the person he saw in the alley behind the store the night of the break-in. Wolfe also testified that he twice saw a man wearing grey camouflage pants in the area around the time of the break-in. Oster's cross-examination of Wolfe focused on Wolfe's inability to identify the person he saw in the alley and Wolfe's testimony that both the man in the alley and the man in the camouflage pants were wearing dark jackets. Oster would later argue that the man in the camouflage pants was likely the actual burglar.

Officer Armentrout responded to the break-in at Large Ink and testified that Oster exhibited several abrasions and scratches when apprehended. Officer Armentrout characterized the wounds as fresh, allegedly suffered while fleeing through a broken

11

glass door at Large Ink. Oster's cross-examination again focused on identity, specifically attacking Officer Armentrout's testimony regarding the freshness of the wounds.

Terre Haute Police Detective Michael Mikuly testified primarily regarding a mobile telephone that was found next to the broken glass door at Large Ink. Detective Mikuly testified that the mobile telephone contained photographs of Oster. Oster's cross-examination focused on the lack of DNA and fingerprint evidence gleaned from the mobile telephone, the lack of footprint evidence, the lack of DNA evidence collected from any broken glass, and the fact that the mobile telephone contained no specific identification of its owner.

Finally, Oster's final argument focused entirely on identity and included the following specific arguments: (1) Wolfe could not place Oster at Large Ink on the night of the break-in; (2) the State failed to establish that Oster's wounds were caused by him "diving through this broken glass[,]" Tr. p. 529; (3) there was no DNA, blood, fingerprint, or footprint evidence tying Oster to the scene; (4) the State failed to establish that the mobile telephone belonged to Oster; and (5) the man in the camouflage pants was actually the person who broke into Large Ink, not Oster. In summary, at no point while cross-examining any State's witness or during any argument did Oster deny, or even suggest, that no burglary had taken place—only that the State failed to prove that Oster was the burglar. Because *mens rea* was not at issue during trial, *Swallows* and similar cases control. The trial court's failure to instruct the jury on all of the elements of theft did not amount to fundamental error.

**IV. Whether Oster's Convictions for Burglary and Criminal**

**Mischief Violate Prohibitions Against Double Jeopardy**

Oster contends, and the State concedes, that Oster's convictions for Class C felony burglary and Class A misdemeanor criminal mischief violate constitutional prohibitions against double jeopardy. Pursuant to *Richardson v. State*, 717 N.E.2d 32, 55 (Ind. 1999), Oster's criminal mischief conviction should be vacated, because it is the one with "less severe penal consequences[.]"

## CONCLUSION

We conclude that the State produced sufficient evidence to sustain Oster's Class C felony burglary conviction and the finding that he is a habitual offender. We also conclude that the trial court did not commit fundamental error in instructing the jury. We agree, however, that Oster's conviction for Class A misdemeanor criminal mischief violates constitutional prohibitions against double jeopardy. We therefore remand with instructions to vacate Oster's conviction and sentence for criminal mischief.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

BROWN, J., concurs.

RILEY, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

THOMAS W. OSTER, II,         )
                                     )

    Appellant-Defendant,    )
                                     )

        vs.               )     No. 84A05-1208-CR-437
                                     )

STATE OF INDIANA,        )
                                     )

    Appellee-Plaintiff.     )

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's decision to affirm Oster's conviction for burglary because I find insufficient evidence to support the conviction. Oster argues that the "there was no evidence of felonious intent to commit theft after the breaking and entering the Large Ink building." (Appellant's Br., p. 5). In order to convict a person of burglary, the State must prove beyond a reasonable doubt that he or she broke and entered the building or structure of another person with intent to commit a felony in it. I.C. § 35-43-2-1. Here, Oster does not deny that he broke and entered Large Ink's building. Rather, he argues that the State failed to present sufficient evidence to prove that he did so with intent to commit a felony therein.

To establish the "intent to commit a felony" element of a burglary charge, the State must prove beyond a reasonable doubt the defendant's intent to commit the felony specified in the charging information. *Freshwater v. State*, 853 N.E.2d 941, 942 (Ind.

14

2006). Intent to commit a given felony may be inferred from the circumstances, but some fact in evidence must point to a fact to commit the specified felony. *Id.* at 943. The evidentiary inference pointing to the defendant's intent must be separate from the inference of the defendant's breaking and entering. *Justice v. State*, 530 N.E.2d 295, 297 (Ind. 1988).

Requiring independent evidence of intent is necessary to maintain the distinction between burglary and other criminal offenses involving property invasion such as criminal trespass, Ind. Code § 35-43-2-2, or residential entry, Ind. Code § 35-43-2-1.5. Permitting the felonious intent element to be inferred from the inference of breaking and entering would render the intent element meaningless and read it out of the statute. *See Faulkner v. State*, 260 Ind. 82, 87, 292 N.E.2d 594, 596 (1973) ("If the Legislature had intended to punish a breaking and entry by itself, as we have here, they would not have added the second element of specific intent. A reading of the statute clearly indicates that both elements are included.").

Here, the State alleged, and was required to prove, that Oster had the intent to commit theft when he broke and entered Large Ink. Oster claims that the State failed to meet its burden. *Freshwater*, 853 N.E.2d at 941, is instructive. There, Freshwater broke into a car wash but ran out when the alarm sounded. *Id.* When he was apprehended by the police, Freshwater was carrying a screwdriver that matched pry marks on the car wash door. *Id.* However, there was no evidence that Freshwater touched anything when he was inside the car wash or that he took anything with him when he left. *Id.* Freshwater was charged with and convicted of burglary. *Id.*

On appeal, the Indiana Supreme Court explained that, "in order to sustain a burglary charge, the State must prove a specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony." *Id.* The court concluded that no such fact had been proven against Freshwater. *Id.* There was no evidence that he was near or approaching anything valuable in the car wash, there was nothing missing from the building or cash register, and the office appeared to have been undisturbed. *Id.* The court therefore reversed Freshwater's conviction. *Id.* at 945.

Similarly, in *Justice*, 530 N.E.2d at 295, Justice entered Tammy Bryant's home and walked into her bedroom wearing black socks on his hands. *Id.* When Bryant recognized him and called his name, Justice immediately left the house. *Id.* When the police arrived, they discovered that a screen had been removed from a dining room window and left on the ground outside and that the back door had been left open. *Id.* The State charged Justice breaking and entering Bryant's residence with intent to commit theft. *Id.* A jury convicted him of burglary. *Id.*

On appeal, the Indiana Supreme Court concluded that there was no fact in evidence that provided a solid basis to support a reasonable inference that the defendant had the specific intent to commit theft. *Id.* at 297. Although there was evidence of breaking and entering, there was no evidence that Justice touched, disturbed, or even approached any valuable property. *Id.* Accordingly, the court reversed Justice's conviction. *Id.*

Here, as in *Freshwater* and *Justice*, the State has failed to prove a specific fact that provides a solid basis to support a reasonable inference that Oster had the specific intent

16

to commit a felony. The method by which Oster entered the building suggests nothing more than that he broke in. He could have done so for any number of reasons that do not include theft. There is no evidence that Oster touched anything or took anything with him during his brief time in Large Ink. Except for the broken window, nothing in the business was disturbed. The fact that Oster was apprehended with two screwdrivers and a pair of pliers does not change this result.

Although the evidence in this case might well support the conclusion that Oster "intended some undetermined sort of wrongdoing, mischief, misdeed, or immoral or illegal act[,] that is not the issue to be resolved." *Freshwater,* 853 N.E.2d at 943 (quoting *Gebhart v. State*, 531 N.E.2d 211, 212 (Ind. 1988)). Where the State cannot establish intent to commit a particular underlying felony, criminal trespass is the appropriate charge. I would therefore reverse Oster's burglary conviction.