## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Corey L. Scott
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Johnny Rice,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 15, 2016

Court of Appeals Case No.
49A02-1506-CR-614

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

Trial Court Cause No.
49G06-1409-F1-43880

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Johnny Rice was convicted of Level 1 felony rape, Level 3 felony rape, Level 6 felony strangulation, and Class A misdemeanor battery. Rice appeals, raising the sole issue of whether the evidence is sufficient to sustain his convictions. Concluding the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict[1] reveal that Rice and M.S. were romantically involved and shared an apartment. On the evening of September 10, 2014, Rice picked up M.S. from work, and they returned to their apartment. At some point before dinner, the couple left the apartment, drove to a liquor store, and then drove to Rice's mother's home. M.S. stayed in the car while Rice conducted his business. Once they returned home, a dispute arose while M.S. was cooking dinner. Rice berated M.S. and smacked M.S. on the side of her face with his open hand.

[3] Later that evening, Rice instructed M.S. to remove her clothes and perform oral sex on him. M.S. complied, but Rice was dissatisfied with her performance. He said, "[i]t don't feel good" and "[y]ou're not doing it right" over and over, hitting her head each time. Transcript at 55. Rice told M.S. that he would

---

[1] We note that Rice did not present the Statement of Facts in his brief in accordance with the applicable standard of review as required by Indiana Appellate Rule 46(A)(6)(b), instead presenting only his version of the facts that was rejected by the jury.

continue to hit her "until it starts feeling better." *Id.* at 55-56. Eventually, M.S.'s face swelled, and she began to bleed. Rice ordered M.S. to clean herself up, but when she did not return quickly enough, he dragged her out of the bathroom by her hair and pushed her against the wall of the bedroom. M.S. slid down the wall to the floor, and Rice grabbed her neck with one hand to pick her up. This caused M.S. to have trouble breathing and black out momentarily.

[4]     Rice, who was drinking an alcoholic beverage, forced M.S. to continue performing oral sex and told M.S. that if he finished his drink prior to ejaculating, he would "beat [her] ass." *Id.* at 60. When Rice finished his drink, he pushed M.S. to the floor and began stomping on her face with his foot. He was wearing shoes at the time. Rice then told M.S. to get in the shower and wash off the blood. When M.S. finished showering, Rice reclined on the bed and instructed her to perform oral sex yet again. M.S. complied until he fell asleep, at which time she grabbed her clothes and keys and ran from the apartment. She drove to the next apartment building and eventually fell asleep. M.S. woke the next morning when she heard a woman in the parking lot. At M.S.'s request, the woman called 911.

[5]     Indianapolis Metropolitan Police Department ("IMPD") Officer Mark Ayler responded to the call. Officer Ayler observed that M.S. appeared badly beaten. An ambulance took M.S. to the hospital, where she was diagnosed with comminuted fractures of three bones around her eyes and nose. The emergency room physician who treated M.S. described the injuries to her face as being like

"dropping a plate on the floor and having it crack into many pieces." *Id.* at 154. The injuries to the bones around her eyes required surgery. In addition, she had bruising around her neck, shoulders, and knees. Her soft palate, tongue, and inner cheek were raw. Her face was extremely swollen, such that she was unable to see. She also had lacerations on her lips, forehead, and over one eye.

[6] With M.S.'s permission, Officer Ayler gained access to the apartment and found Rice alone in the living room. Rice was belligerent and uncooperative. Officer Ayler immediately noticed a pair of shoes with blood around the edges in the hallway leading to the bedroom. When he entered the bedroom, he saw "a large amount of blood on the walls, the bed, the carpet, the TV stand, on the TV." *Id.* at 35. There was also blood on the bedroom ceiling, in the bathroom, and in the kitchen. Serological samples were not taken from every item and surface in the apartment, but investigators took representative samples from every room. Forensic analysis confirmed the samples were M.S.'s blood.

[7] Rice was taken into custody and gave a statement to IMPD Detective Michelle Floyd. Rice claimed a woman named "Tiff" came to the apartment and that she and M.S. had gotten into a fight. *Id.* at 324. He also told Detective Floyd that he was looking forward to M.S. returning home so M.S. could clean up the mess she had made. Rice gave Detective Floyd a phone number he claimed belonged to "Tiff," but Detective Floyd was unable to locate "Tiff." Detective Floyd observed no injuries on Rice's hands.

[8] The State charged Rice with Level 1 felony rape, Level 3 felony rape, Level 5 felony battery, Level 6 felony strangulation, and Class A misdemeanor battery.[2] At trial, M.S. and various medical, forensic, and law enforcement officials testified for the State. Rice took the stand in his own defense and testified that "Tiff" caused all of M.S.'s injuries. The jury found Rice guilty of all charges. The trial court entered judgment of conviction on the two rape counts, strangulation, and misdemeanor battery, and sentenced Rice to thirty-six years in the Department of Correction, with four years suspended to probation. Rice now appeals his convictions.

# Discussion and Decision

## I. Standard of Review

[9] "When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict." *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. It is the fact-finder's role to assess witness credibility and weigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Accordingly, when confronted with conflicting evidence on appeal, we must consider it most favorably to the judgment. *Id.* We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* at

---

[2] Charges of Level 6 felony intimidation and Class B misdemeanor battery by bodily waste were dismissed prior to trial.

147. The evidence need not overcome every reasonable hypothesis of innocence. *Id.*

## II. Sufficiency of the Evidence

At the outset, Rice concedes that M.S. was badly beaten and suffered serious injuries as a result. Nonetheless, Rice contends the State's evidence fails to prove that he is responsible for M.S.'s injuries. Rice argues the evidence does not support the jury's verdicts for several reasons.

First, Rice argues M.S. was not compelled by force or fear because M.S. admitted she consensually performed oral sex on him and did not flee when they were running errands. *See* Ind. Code § 35-42-4-1(a)(1) (defining rape as occurring when a person knowingly or intentionally causes another person to perform or submit to sexual conduct when "the other person is compelled by force or imminent threat of force"). Although M.S. did admit she initially performed oral sex on Rice willingly, she also testified that she continued once he began hitting her only because she was afraid of him. As to M.S.'s opportunity to flee, they left the apartment prior to the acts of violence, and M.S. testified things between them were "relatively fine" at that point. Tr. at 69.

Second, Rice argues he could not have beaten M.S. as she claims because the police did not observe blood on Rice, and he appeared to have no injuries. However, Rice was alone in the apartment for several hours after the assault, and he easily could have washed away any blood during that time. Moreover,

M.S. testified Rice hit her with an open hand and stomped on her face with his feet while wearing shoes. Neither action was likely to injure Rice.

[13] Third, Rice contends the State should have disproven the existence of "Tiff" by testing all of the DNA evidence at the scene. "As a practical matter," Rice argues, "the State could have all but eliminated the probability that a third person, namely [Tiff], was present on the night in question." Brief of Appellant/Defendant at 8. But "as a practical matter," the State could *not* test every single blood drop, stain, or smear in the apartment. As the crime scene specialist testified, "it was a heavy blood scene event," tr. at 137, with blood on all the walls in the bedroom, plus the floor and ceiling, as well as in the bathroom, hallway, and kitchen. It was therefore "not actually physically possible" to test everything. *Id.* at 140. Instead, representative samples were taken from all areas of the apartment where it appeared there was blood, and every one of those samples came back positive for M.S.'s blood and no one else's. Nor could the State reasonably conduct DNA testing of every surface in the apartment to eliminate the presence of a third person. Rice gave the police a phone number he said belonged to "Tiff," but the police were unable to locate her through this number. Even if there had been evidence of a third person, there would be no way to prove that it was from "Tiff," let alone from the night in question.

[14] Finally, Rice contends his conduct following the incident is inconsistent with guilt. Rice characterizes his actions as cooperative, in that he gave a statement to police and did not attempt to cover up by cleaning the crime scene.

However, Officer Ayler characterized Rice during their initial encounter as belligerent and "not very cooperative." *Id.* at 29. And Rice told Detective Floyd that he did not clean up the apartment because he expected M.S. to return and clean up the mess she had made.

[15] Rice's argument is a classic example of a request for this court to reweigh the evidence and judge the credibility of the witnesses for itself. As stated above, these evaluations are for the trier of fact and not this court. "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). The evidence recited above provides a sufficient factual basis upon which a reasonable trier of fact could infer that Rice committed the crimes for which he was convicted. Notwithstanding Rice's testimony presenting a different version of the incident, M.S. testified Rice forced her to perform oral sex for hours, repeatedly hit and threatened her, stomped on her face, and grabbed her neck so firmly that she momentarily lost consciousness. This evidence is sufficient to support Rice's convictions.

## Conclusion

[16] The evidence presented at trial is sufficient to support Rice's convictions. We therefore affirm.

[17] Affirmed.

Barnes, J., and Altice, J., concur.