## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 02 2019, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James C. Spencer
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon McGaughey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 2, 2019

Court of Appeals Case No.
18A-CR-1872

Appeal from the Jefferson Superior Court

The Honorable Michael J. Hensley, Judge

Trial Court Cause No.
39D01-1802-F5-154

**Baker, Judge.**

[1] Brandon McGaughey appeals his conviction for Level 5 Burglary,[1] arguing that he was entitled to discharge, that the evidence was insufficient, and that the trial court erred by offering a certain jury instruction. Finding that he was not entitled to discharge, the evidence sufficient, and no error, we affirm.

## Facts

[2] In September 2017, McGaughey borrowed a truck from his friend Tyler Humbert. On Friday, November 24, 2017, Madison Police Officer Phillip Wimpee was driving to the scene of an incident on Hooten Boulevard when he saw a green Dodge truck pass him on the road. When he arrived, he spoke to the woman who had reported the incident; the woman said the truck had been involved in the incident. Officer Wimpee notified other officers, and they began searching for the truck.

[3] Shortly thereafter, Officer Wimpee was dispatched regarding a suspicious vehicle in a driveway on Ross Street. When the officer arrived, he saw the green Dodge truck parked in the driveway. The officer saw three flat-screen televisions, a wooden jewelry box, and a youth compound archery bow in the truck's bed. Justin Girdler, the property owner, told Officer Wimpee that the truck was blocking the driveway and that he did not want it there. Officer Wimpee decided to have the truck towed.

---

[1] Ind. Code § 35-43-2-1.

[4]     Chandler Chevrolet, the tow company, sent Tim Caudle to tow the truck to its impound lot. The lot is secured by an eight-foot fence that has barbed wire and razor wire wrapped around it and an industrial lock and chain at the entrance. At 10:58 p.m., Caudle received a call from a person, later identified as McGaughey, asking about the truck. Caudle told McGaughey that he was not authorized to release the truck until Monday morning. McGaughey became upset and said he "wanted his 'f**king' truck." Tr. Vol. II p. 127. Caudle told McGaughey that to retrieve the truck from the impound lot, McGaughey would need to show proof of ownership, a picture I.D., and valid insurance sometime between Monday and Friday.

[5]     The next day, Caudle went to the impound lot to see whether the items were still in the truck. Caudle saw that the truck was gone, driven through a section of the fence that had been removed with bolt cutters. Caudle also noticed that someone had tried to cut through the industrial chain at the entrance. Caudle reported the stolen truck to the police. The police found the truck at McGaughey's residence. Caudle towed the truck back to the impound lot.

[6]     On February 8, 2018, the State charged McGaughey with Level 5 felony burglary and added an habitual offender enhancement. On March 1, 2018, McGaughey filed a motion for a speedy trial. The trial court granted his motion and set a jury trial for May 1, 2018. On April 19, 2018, the State filed a motion to continue because it had not yet received an analysis of McGaughey's cell phone data and because it wanted more time to find and interview three

possible witnesses who may have seen McGaughey in the truck on the night in question. The trial court granted the State's motion.

[7] On May 10, 2018, McGaughey filed a motion for discharge, which the trial court denied. A jury trial took place from June 5-8, 2018. When instructing the jury before deliberation, the trial court gave an instruction on accomplice liability that stated as follows:

> A person who, knowingly or intentionally, aids, induces, or causes another person to commit an offense commits that offense.
>
> A person may be convicted of, aiding, inducing, or causing Burglary, even if the other person has not been prosecuted for Burglary, has not been convicted of Burglary, or has been acquitted of the Burglary.

Appellant's App. Vol. V p. 9.

[8] The jury found McGaughey guilty as charged. He admitted to being an habitual offender. On July 2, 2018, the trial court sentenced him to four years for his burglary conviction enhanced by four years for being an habitual offender, for an aggregate term of eight years. McGaughey now appeals.

# Discussion and Decision

## I. Motion for Discharge

[9] McGaughey first argues that the trial court erred by denying his motion for discharge. Specifically, he argues that because the delay in bringing him to trial

was attributed to the State, the trial court should have granted his motion for discharge because of the violation of his speedy trial request.

[10]     Indiana Criminal Rule 4(B)(1) provides:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. . . .

Criminal Rule 4(D) provides for a ninety-day extension under certain circumstances:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

"The determination of whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee largely depends on the specific circumstances of the case." *Wheeler v. State*, 662 N.E.2d 192, 193 (Ind. Ct. App. 1996). We will reverse a trial court's order concerning Indiana Criminal Rule 4(B) and 4(D) if the trial court's decision is clearly against the logic and effect of

the facts and circumstances before the trial court. *Small v. State*, 112 N.E.3d 738, 741 (Ind. Ct. App. 2018).

[11] McGaughey requested a speedy trial on March 1, 2018; consequently, the seventy-day deadline expired on May 10, 2018. On April 19, 2018, the State moved for a continuance, which the trial court granted. McGaughey's jury trial then took place on June 5, 2018, twenty-six days after the expiration of the seventy-day deadline.

[12] McGaughey's alibi was that he was visiting his parents at the time of the crime. In its motion to continue, the State identified two reasons for its request. First, it wanted an analysis of McGaughey's cell phone records for the relevant time period, and second, it wanted to find and interview three potential witnesses who may have seen McGaughey in the truck on the night in question. Each of the State's reasons for its request were relevant to disproving McGaughey's alibi defense.

[13] Further, the State's motion fell squarely within the purview of Criminal Rule 4(D). The State provided a timeline of its investigation of McGaughey's cell phone. His cell phone was not discovered until February 2018. On February 5, 2018, an officer applied for a search warrant for it. On April 4, 2018, the State received the cell phone records from the cell phone service provider. On April 11, 2018, the State requested an in-depth analysis from the Indiana State Police. A detective received the service provider's records that same day; in his affidavit, which was attached to the State's motion, he testified that, in his

experience, it would take approximately six to eight weeks to analyze the records. In short, the State showed that it had made a reasonable effort to procure the evidence and that it believed the evidence could be procured within ninety days. The State therefore showed that it met the requirements of Criminal Rule 4(D). Accordingly, the trial court did not err by denying McGaughey's motion for discharge.

## II. Sufficiency of the Evidence

[14] McGaughey next argues that the evidence was insufficient to support his conviction for burglary. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[15] To convict McGaughey of burglary, the State was required to prove beyond a reasonable doubt that McGaughey broke and entered the building or structure of another person with intent to commit a felony or theft in it. I.C. § 35-43-2-1. Theft occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use[.]" Ind. Code § 35-43-4-2.

[16] A burglar's intent to commit a specific felony at the time of the breaking and entering may be inferred from the circumstances. *Oster v. State*, 992 N.E.2d 871,

875-76 (Ind. Ct. App. 2013). Circumstantial evidence alone is sufficient to sustain a burglary conviction. *Id.* at 876. Although evidence of intent does not need to be insurmountable, there must be a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony[.]" *Id.* (quotation marks and citation omitted).

[17] McGaughey first argues that because he had Humbert's permission to possess and use the truck, he did not commit theft—because he did not exert unauthorized control over the truck—and if he did not commit theft, he could not have committed burglary. Whether Humbert allowed McGaughey to possess and use the truck is irrelevant. Once the truck was in the impound lot, no one could take the truck without following the tow company's procedure, which meant that the property owner had to come to the tow company's office between Monday and Friday with proof of ownership, a picture I.D., and valid insurance. Because Humbert was the truck's owner, the tow company could release the vehicle only to him.

[18] McGaughey also argues that the evidence established that he was with his parents at the time of the crime. The record shows that Caudle received a call from a person, later identified as McGaughey, asking about the truck at 10:58 p.m. on the night it was towed. Caudle told McGaughey that he was not authorized to release the truck until Monday morning, and McGaughey became upset and said he "wanted his 'f**king' truck." Tr. Vol. II p. 127. After Caudle reported the truck stolen from the impound lot, the police found it again at McGaughey's residence. There was also evidence presented that

during the relevant time period, McGaughey's cell phone did not connect with any cell towers that cover the area of his parents' residence, which is where he said he was the night of the crime. His argument amounts to a request that we reweigh the evidence, which we decline.

McGaughey also alleges that because one witness testified that McGaughey would allow others to use the truck and his phone, it was possible that some unknown person was using the truck when it was impounded, became concerned about McGaughey's possible reaction to the truck being impounded, and removed the truck from the impound lot. Again, this argument is simply an invitation to reweigh the evidence, which we may not do. The evidence was sufficient to support McGaughey's conviction.

## III. Jury Instruction

Finally, McGaughey contends that the trial court erred by instructing the jury on accomplice liability because he had not been charged as an accomplice and there was no evidence presented as to what acts he had committed to make him an accomplice or with whom he had acted.

When evaluating jury instructions on appeal, we consider whether the tendered instruction correctly stated the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions. *Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010). We will reverse a conviction only if the appellant demonstrates that the instruction error prejudices his substantial rights. *Id.*

[22] "In Indiana, the responsibility of a principal and an accomplice is the same." *Taylor v. State*, 840 N.E.2d 324, 338 (Ind. 2006). An instruction on accomplice liability is proper where there is some evidence that a second party was involved in the crime. *Id.* A person may be charged as a principal yet convicted on proof that he aided another in the commission of a crime. *Id.* Due process does not require the State to give a defendant some pretrial notice that it intended to try him as an accessory rather than as a principal. *Id.*

[23] Although the State did not charge McGaughey as an accomplice, the State was not precluded from pursing an accomplice liability theory during trial because there was evidence against McGaughey as the principal actor and there was some evidence that a second party was involved in the crime. Regarding the evidence of McGaughey as the principal actor, after the truck was towed, McGaughey called Caudle and demanded "his 'f**king' truck." Tr. Vol. II p. 127. Caudle told McGaughey how the truck could be retrieved, yet the next morning, the truck was missing from the impound lot. It was then found at McGaughey's residence. McGaughey's alibi that he was at his parents' house when the truck was taken was contradicted by his cell phone records.

[24] Regarding evidence that there was a second party involved in the crime, Caudle testified that the fact that the top of the truck did not have scratches on it after it was found showed "that somebody had to help hold that razor wire and barb wire up while the truck drove through the cut chain link opening." Tr. Vol. II p. 105. In other words, there was evidence that a second person was involved because the way in which the truck was removed required one person to hold

up the razor wire while another person drove the truck through the opening. Because of this evidence, the trial court did not err in giving the instruction on accomplice liability.

[25] The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.