## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2019, 8:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vincent E. Banks, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | December 19, 2019 <br><br> Court of Appeals Case No. 19A-CR-1312 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Clarence D. Murray, Judge <br><br> Trial Court Cause No. 45G02-1703-F1-2 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Vincent Banks was convicted of attempted murder, a Level 1 felony; auto theft and theft, both Level 6 felonies; and was found to be an habitual offender. Banks appeals, raising several issues which we consolidate and restate as: 1) whether the trial court abused its discretion in allowing a victim to testify to statements made by her doctor and admitting unredacted medical records into evidence, 2) whether the evidence is sufficient to support Banks' attempted murder conviction, and 3) whether Banks' auto theft and theft convictions violate the single larceny rule. We conclude that the trial court abused its discretion in allowing a victim to testify to statements made by her doctor, but we conclude such error was harmless. However, the trial court did not abuse its discretion in admitting the victim's unredacted medical records into evidence. We also conclude that the evidence is sufficient to support Banks' conviction of attempted murder, and Banks' convictions for both auto theft and theft violated the single larceny rule. We therefore affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

[2] The facts most favorable to the verdict are that Banks and Tiffany Young are cousins who grew up together. Banks would often help Young when her car needed repairs. In early 2017, Young drove her car to Banks' home in Gary, Indiana, where he lived with his mother (and Young's aunt), Fransis, and Fransis' boyfriend, Jimmie Brown, and asked if he would repair the brakes on

her car. After the brakes were fixed, Banks accompanied Young while she ran errands, including picking up $800.00 in cash. Young paid Banks $25.00 for the brake repair. Banks asked for additional money, and Young eventually gave him an additional $12.00.

[3] Young drove Banks back to his house. While Young sat in her car smoking marijuana and playing with her phone, she noticed Banks constantly walking around the neighborhood and in and out of his house. Banks approached Young's car several times and asked her to take him to a certain location, but Young refused because she did not want to drive while her car smelled like marijuana. At some point, Young dozed off. She was awakened by a "click[ing] noise" and turned to see Banks coming into the backseat of her car. Transcript, Volume 2 at 167. Banks put his arm over Young's face. Young initially thought Banks was playing and said, "stop, Vincent." *Id*. at 168. But then Banks told her to "shut the f**k up" and kept repeating that he was going to kill her as he cut her throat with what she thought was a razor. *Id*. at 167.

[4] Young was able to escape through the passenger side of the car. While running to Banks' house, Young noticed Banks driving away in her vehicle. Brown answered the door and Young informed Brown and Fransis that Banks had cut her throat and tried to kill her. Fransis called the police.

[5] Officers arrived at the scene where Brown and Fransis informed them that Banks had cut Young. Young was transported to Methodist Hospital where it was determined that she suffered a "laceration to the anterior neck with

penetration of the platysma."[1] Amended Confidential Jury Trial and Sentencing Exhibits ("Exhibits"), Volume 5 at 51. She sustained a cut from one side of her neck to the other and received approximately twenty stitches to her neck as a result of her injury.

[6] Officer Isaiah Price of the Gary Police Department was dispatched to the hospital to gather supplemental information. While there, he received information from Young's family members of the possible whereabouts of Young's vehicle. Officer Price recovered Young's vehicle in a parking lot of an apartment building. Located inside the vehicle was Young's purse, her identification card, and a black jacket belonging to Banks.[2] The officers did not locate the cash Young previously had in her purse. No weapon was recovered.

[7] The State charged Banks with attempted murder, aggravated battery, battery by means of a deadly weapon, battery resulting in serious bodily injury, auto theft, and theft. At trial, Young repeatedly identified Banks as her attacker. Brown also testified that Young told him that Banks was the person who tried to kill her. *See* Tr., Vol. 3 at 8. Young's unredacted medical records were admitted into evidence over Banks' objection. The medical records stated that "[Young]

---

[1] Platysma is defined as: "a broad thin layer of muscle that is situated on each side of the neck immediately under the superficial fascia belonging to the group of facial muscles, that is innervated by the facial nerve, and that draws the lower lip and the corner of the mouth to the side and down and when moved forcefully expands the neck and draws its skin upward." "Platysma," Merriam-Webster (2019), https://www.merriam-webster.com/medical/platysma (last visited November 6, 2019).)

[2] At trial, the parties stipulated that the black jacket found in Youngs vehicle belonged to Banks. *See* Tr., Vol. 2 at 63.

got in an altercation with family and someone slit her neck with a razor blade." Exhibits, Vol. 5 at 34. The trial court also admitted into evidence, over Banks' objection, Young's testimony that Dr. Rutland, the doctor who stitched her wound, "said that if [Banks] would have cut me four inches more or if I would have moved while [Banks] was cutting me, . . . I wouldn't be here[.] I would have died." Tr., Vol. 2 at 171. Dr. Rutland did not testify at trial.

[8] A jury found Banks guilty on all counts. The trial court merged the aggravated battery, battery by means of deadly force, and battery resulting in bodily injury convictions into Banks' attempted murder conviction and entered judgments of conviction only for attempted murder, auto theft, and theft. The trial court sentenced Banks to thirty years for attempted murder, enhanced by six years for being an habitual offender, and two years each for auto theft and theft, to be served concurrently with each other but consecutively to the sentence for attempted murder. Banks therefore received an aggregate sentence of thirty-eight years to be served in the Indiana Department of Correction. Banks now appeals.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

[9] Our standard of review in this area is well-settled: the admission of evidence falls within the sound discretion of the trial court, and we review the trial

court's decision for abuse of that discretion. *Mack v. State*, 23 N.E.3d 742, 750 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Morrison v. State*, 824 N.E.2d 734, 739 (Ind. Ct. App. 2005), *trans. denied*. But even if a trial court abuses its discretion by admitting challenged evidence, we will not reverse the judgment if the admission of evidence constituted harmless error. *Sugg v. State*, 991 N.E.2d 601, 607 (Ind. Ct. App. 2013), *trans. denied*. Error in the admission of evidence is harmless if it does not affect the substantial rights of the defendant. *McVey v. State*, 863 N.E.2d 434, 440 (Ind. Ct. App. 2007), *trans. denied*.

[10] Banks contends that the trial court abused its discretion when it admitted certain hearsay evidence. "Hearsay" is defined as an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is inadmissible unless it meets one of the exceptions to the hearsay rule. Evid. R. 802.

## B.  Doctor's Statement to Young

[11] At trial, when the State asked Young whether she learned anything about her injury during her follow up visit with Dr. Rutland, Banks objected on the grounds of hearsay. The trial court overruled the objection. Young then testified, "Dr. Rutland . . . said that if [Banks] would have cut me four inches more or if I would have moved while [Banks] was cutting me, . . . I wouldn't be here, I would have died." Tr., Vol. 2 at 171. Banks argues the trial court abused

its discretion in allowing this testimony because it was a statement from Young's physician and not Young herself. We agree with the State's concession that Young's testimony regarding Dr. Rutland's statement to her was inadmissible hearsay and that no hearsay exception applies.[3]

[12] Having concluded the trial court erred in admitting inadmissible hearsay, we must address whether such error was harmless. We will not reverse an error in the admission of evidence if the error does not affect a substantial right of the defendant. *See McVey*, 863 N.E.2d at 440. "An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor that it did not affect the substantial rights of the party." *Simmons v. State*, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002).

[13] Banks argues that admission of the statement was not harmless because the jury had an opportunity to infer based on the location of Young's injury that he committed attempted murder, rather than the crime of aggravated battery. He contends that because there is no other evidence but Young's hearsay testimony that explains the severity of her injury, the "prejudicial impact of this hearsay testimony cannot be overstated." Appellant's Brief at 21. We reject this contention because the plain language of the statute does not require the State to prove the severity of the injury. Instead, it requires the State to prove beyond

---

[3] The State briefly analyzes the exception for statements made for medical diagnosis or treatment, *see* Evid. R. 803(4), and correctly concludes it does not apply because the statement was made *by* a medical professional not *to* a medical professional. *See* Brief of Appellee at 15.

a reasonable doubt that Banks, acting with the specific intent to kill Young, took a substantial step toward doing so. *See* Ind. Code §§ 35-41-5-1(a), 35-42-1-1(1). Here, the State presented evidence that Banks cut Young's throat with a sharp object while stating he was going to kill her. In support, the State presented pictures to the jury showing Young suffered a cut to her neck from one side to the other, requiring twenty stitches. This evidence alone shows that Banks took a substantial step with the required culpability toward killing Young. The State did not need to present medical testimony to the jury for it to find that using a sharp object to cut a person's throat is a substantial step toward killing someone. Based on the totality of the evidence presented to it, the jury could have reasonably concluded that Banks intended to kill Young by cutting her throat while threatening to kill her. In light of the substantial independent evidence of Banks' guilt, the probable impact of Dr. Rutland's statement is sufficiently minor so as to not affect Banks' substantial rights. *See Rogers v. State*, 897 N.E.2d 955, 961 (Ind. Ct. App. 2008). Therefore, the erroneous admission of Dr. Rutland's statement to Young was harmless.

## C. Banks' Identification in Medical Records

[14]     Banks next argues that the trial court abused its discretion when it admitted into evidence Young's unredacted medical records that contained inadmissible hearsay. Banks contends that Young's unredacted medical records identified him as the attacker, which denied him a fair trial because he denied having cut Young. He acknowledges that statements made pursuant to medical treatment or diagnosis are admissible under Indiana Rule of Evidence Rule 803(4), but he

claims that statements about the identity of the attacker who cause the injuries are not admissible under this exception. *See* Appellant's Br. at 23.

[15] Indiana Evidence Rule 803(4) provides that statements for the purposes of medical diagnosis or treatment are admissible if the statement:

> (A) is made by a person seeking medical diagnosis or treatment;
>
> (B) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and
>
> (C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause.

*Id*. This hearsay exception is "based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely that the declarant would mislead the medical personnel person she wants to treat her." *Miles v. State*, 777 N.E.2d 767, 771 (Ind. Ct. App. 2002).

[16] Statements made for the purpose of medical diagnosis or treatment do not include statements that identify the perpetrator because the identity of the perpetrator is usually not necessary to provide effective medical care. *Perry v. State*, 956 N.E.2d 41, 49 (Ind. Ct. App. 2011). Such statements are typically inadmissible. *Id.*

[17] We conclude that Young's unredacted medical records did not contain inadmissible hearsay. The unredacted medical records did not disclose the *identity* of Banks; rather, the medical records read in pertinent part, "[Young]

got in an altercation with family and *someone* slit her neck with a razor blade." Exhibits, Vol. 5 at 34 (emphasis added). Certainly, there is nothing in that statement that establishes a clear connection between Banks and Young's attacker.

[18] Banks, however, argues that the statement in Young's unredacted medical records identified her attacker as someone within her family and asserts that the jury only heard evidence that it was him (Young's cousin). Although this may suggest to the jury that Banks was a possible attacker, it does so only in conjunction with independent evidence that Banks was responsible. Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence properly admitted. *McVey*, 863 N.E.2d at 440. The statement which Banks argues was erroneously admitted was merely cumulative of other properly admitted evidence disclosing his identity. Young repeatedly testified that she recognized the voice of the person who attacked her as being Banks' voice. She further stated that when someone entered her car, "the first thing I said . . . was stop, Vincent." Tr., Vol. 2 at 168. In addition, Brown testified that Young told him that Banks was the person who was trying to kill her. Given the evidence in the record pertaining to Banks' identification, the statement in Young's unredacted medical records was merely cumulative and even erroneous admission of the statement would not be reversible error. *See McVey*, 863 N.E.2d at 440.

[19] In light of the other evidence in the record, the trial court's decision to admit into evidence Dr. Rutland's statement to Young and Young's unredacted medical records does not warrant reversal of Banks' attempted murder conviction.

## II. Sufficiency of the Evidence

[20] Banks contends that the State failed to present sufficient evidence to sustain his conviction for attempted murder. When reviewing the sufficiency of the evidence to support a conviction, "we neither reweigh the evidence nor judge the credibility of the witnesses[.]" *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005) (quotation omitted). We consider only the probative evidence and reasonable inferences supporting the verdict. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. We consider conflicting evidence in the light most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find that the elements of the crime were proven beyond a reasonable doubt. *Id*.

[21] To convict Banks of attempted murder, the State was required to prove beyond a reasonable doubt that Banks, acting with specific intent to commit murder, engaged in an overt act that constituted a substantial step toward the commission of the crime. *See* Ind. Code §§ 35-41-5-1(a), 35-42-1-1(1). Our supreme court has stated that the use of a deadly weapon in a manner likely to cause death or great bodily harm is sufficient evidence from which the

factfinder can infer an intent to kill. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002).

[22] Banks denies that he was the person who committed the crime and claims that the evidence failed to show he had a specific intent to murder. Banks is simply asking this court to reweigh the evidence, which our standard of review does not allow. *See Wright*, 828 N.E.2d at 906. Instead, we consider only the probative evidence supporting the verdict and reasonable inferences arising therefrom. *See Oster*, 992 N.E.2d at 875.

[23] Here, the evidence most favorable to the verdict shows that Banks entered Young's car through the back door and put his arm over her. Young told Banks to stop. He repeatedly told her to shut up and stated, "I'm going to kill you." Tr., Vol. 2 at 167. Pictures admitted into evidence showed a cut on Young's neck from one side to the other resulting in twenty stitches in her neck. *See* Exhibits, Vol. 5 at 7-8. At trial, Young identified Banks as the person who cut her throat and threatened to kill her. Moreover, when Officer Price located Young's vehicle, Banks' black jacket was recovered inside, which would further suggest that Banks was the person who injured Young. Brown also testified that Young identified Banks as the person who tried to kill her. This is sufficient evidence from which a jury could reasonably infer that Banks was the person who wounded Young and that he acted with the specific intent to kill Young when he cut her throat. *See, e.g.*, *Miller v. State*, 106 N.E.3d 1067, 1074-75 (Ind. Ct. App. 2018) (holding that the defendant acted with the specific intent to kill when he slit the victim's throat with a knife, requiring the victim to receive forty

stitches), *trans. denied*. We therefore conclude that the State presented sufficient evidence to support Banks' conviction for attempted murder.

## III. Single Larceny Rule

[24] Banks was charged with auto theft for stealing Young's car and with theft for stealing her purse and the money therein. Banks argues that his convictions for both auto theft and theft violate the single larceny rule because both the car and the items in the car were taken at the same time, from the same place, and from the same person. The State concedes this point and suggests that we remand to the trial court to vacate Banks' conviction for theft.

[25] The single larceny rule has historically provided that "when several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons there is but a single 'larceny', *i.e.* a single offense." *Raines v. State,* 514 N.E.2d 298, 300 (Ind. 1987). "The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design." *Id.* "If only one offense is committed, there may be but one judgment and one sentence." *Id.*

[26] The single larceny rule is applicable to the facts of this case. Banks was convicted of and sentenced for both auto theft and theft. But the vehicle and the money were stolen from Young at the same time and place. We agree with the parties and conclude that the theft of the vehicle and the money, although separately charged, constituted one offense for which there may be but one judgment and one sentence. *See, e.g., N.R.H. v. State*, 25 N.E.3d 1280, 1282 (Ind.

Ct. App. 2015) (concluding that the defendant's conduct of stealing currency and inventory from the same store at the same cash register within a few minutes time amounted to a single offense and therefore, she could be convicted of only one count of theft). Therefore, we conclude that Banks' auto theft and theft convictions violated the single larceny rule and we remand to the trial court to vacate one of the Level 6 convictions.[4]

# Conclusion

[27] The trial court did abuse its discretion in allowing Young to testify to statements made to her by her doctor, but we conclude that such error was harmless. The trial court did not abuse its discretion in admitting Young's unredacted medical records. We also conclude that the evidence presented at trial is sufficient to support Banks' conviction for attempted murder. We therefore affirm the trial court's judgment with respect to those issues. However, Banks' auto theft and theft convictions violate the single larceny rule and, therefore we remand this cause to the trial court with instructions to vacate one of the Level 6 convictions and amend the sentencing order accordingly.

[28] Affirmed in part, reversed in part, and remanded.

Mathias, J., and Pyle, J., concur.

---

[4] Banks also contends these two convictions violate the prohibition against double jeopardy. In light of our conclusion that the single larceny rule precludes both convictions, we need not address the double jeopardy claim.