FILED

Jul 01 2016, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Jill M. Acklin
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Adrian Anthony, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 1, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1510-CR-1557 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark D. Stoner, Judge <br><br> Trial Court Cause No. <br> 49G06-1311-FA-075931 |

**Bradford, Judge.**

# Case Summary

[1]     In 2013, Appellant-Defendant Adrian Anthony, along with three other men, committed a violent burglary at an Indianapolis home belonging to R.N. and his wife, B.N.  During the burglary, the men brutally attacked and threatened to

kill the homeowners, ransacked the house, sexually assaulted B.N., and took the couple's debit cards. At one point, one of the men took R.N.'s debit card to a nearby ATM and attempted to withdraw money using a personal identification number ("PIN") which R.N. had given him. However, the PIN did not work and the man was unable to withdraw any money. Upon his return, Anthony threatened to kill R.N. for providing an incorrect PIN and R.N. offered to go to the ATM and get the money himself. Anthony then took R.N. to the ATM at gunpoint. R.N. was unable to withdraw money using his debit card because his account had been locked due to too many unsuccessful attempts. Ultimately, Anthony returned to the ATM with B.N. and was able to withdraw $500 using B.N.'s debit card.

[2] A jury found Anthony guilty of thirty-five counts relating to the burglary which included fourteen counts of forgery (one for each attempt to withdraw money using the victims' debit cards). Anthony received six years for each forgery conviction to be served concurrently and an aggregate sentence of eighty-eight years executed in the Department of Correction ("DOC"). On appeal, Anthony argues that there is insufficient evidence to support his convictions for forgery because the debit cards used were not forged instruments. Concluding otherwise, we affirm.

# Facts and Procedural History

[3] In the early morning hours of October 24, 2013, Anthony and three accomplices—Michael Pugh, Taiwan Lundy, and Trae Spells—broke into a

Northside-Indianapolis home belonging to R.N. and his wife, B.N. One of the men entered the bedroom and held R.N. and B.N. at gunpoint while the remaining group members ransacked the house taking anything of value including jewelry, purses, watches, electronics, and televisions. The individual holding the couple at gunpoint asked them where they kept their cash. When the couple responded that they did not keep money in the house, the individual fired the gun over their heads and continued to question them about where they kept their money until R.N. stated that their money was in the bank. R.N. then gave the men a PIN to use with his debit card.

[4] The couple remained at gunpoint while one member of the group took B.N.'s 2006 Jeep Commander to a nearby ATM and attempted to withdraw money from R.N.'s account without success. Eventually, the man returned and accused R.N. of lying about his PIN. The men threatened to kill the couple and R.N. offered to go to the ATM with the men to retrieve money, suggesting that the PIN may have been entered incorrectly. The group then violently assaulted R.N. before ultimately deciding to take R.N. to the ATM.

[5] While being held at gunpoint, R.N. drove Anthony to the ATM and attempted to withdraw money himself. However, R.N. was unable to complete a transaction with the same ATM card because his account had been locked due to the number of unsuccessful prior attempts. Anthony then stated, "You lied to me again. You guys are dead." Tr. p. 79. R.N. told Anthony that his wife had a separate account with a different ATM card and the two then returned to the house to retrieve it.

[6] After locating B.N.'s debit card, Anthony forced B.N. to drive him back to the ATM. Once at the ATM, B.N. attempted to withdraw $800 but the amount was denied because there is a maximum of $500 which may be withdrawn in a given period of time. B.N. then successfully withdrew $500 and gave it to Anthony. B.N. then attempted to make additional withdrawals but was unsuccessful. All told, there were thirteen attempted ATM transactions with only one being successful. The first five unsuccessful transactions occurred around 6:18 a.m., the second five unsuccessful transactions occurred around 7:37 a.m., and the final three transactions, including the sole successful withdrawal, occurred around 8:01 a.m.

[7] After returning to the house, Anthony and the other men tied up R.N. and B.N., loaded the stolen items into B.N.'s vehicle, and savagely beat the couple over the head with a DVD player before leaving the house. After they were sure that the group had left, the couple freed themselves and called 911.

[8] The State charged Anthony with one count of Class A felony burglary, one count of Class A felony conspiracy to commit burglary, four counts of Class B felony robbery, eleven counts of Class B felony criminal confinement, two counts of Class C felony intimidation, thirteen counts of Class C felony forgery, one count of Class C felony conspiracy to commit forgery, one count of Class C felony sexual battery, one count of Class A felony criminal deviate conduct, three counts of Class C felony battery, and two counts of Class B felony carjacking. The jury found Anthony guilty on thirty-five counts, not guilty on one count of Class C felony battery, and was unable to reach a verdict regarding

sexual battery, criminal deviate conduct, and two counts of criminal confinement. Anthony received six years for each forgery conviction to be served concurrently and an aggregate sentence of eighty-eight years executed in the DOC.

## Discussion and Decision

[9] On appeal, Anthony argues that there is insufficient evidence to sustain his convictions for forgery.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (citations and quotations omitted). However, questions concerning the interpretation of a statute are legal issues which we review de novo. *Rich v. State*, 890 N.E.2d 44, 49 (Ind. Ct. App. 2008).

[10] Anthony argues that using the victims' ATM cards did not qualify as "uttering" a written instrument for purposes of the forgery statute. Indiana code section 35-43-5-2 (2014) provides that "A person who, with intent to defraud, makes,

utters, or possesses a written instrument in such a manner that it purports to have been made: (1) by another person…; or (4) by authority of one who did not give authority; commits forgery, a Class C felony." The charging information alleged that Anthony and Spells "with the intent to defraud, utter[ed] to Chase Bank a written instrument, that is: a debit card...in such a manner that said instrument purported to have been made by the authority of [R.N. or B.N.], who did not give authority." Appellant's App. pp. 51-53. The jury was instructed that "utter," as defined by Indiana code section 35-31.5-2-345, means "to issue, authenticate, transfer, publish, deliver, sell, transmit, present, or use."

[11] At first glance, it appears that Anthony's behavior qualifies as forgery under the express language of the statute. Anthony uttered (i.e., presented or used) written instruments—the victims' debit cards—in a manner such that it appeared that the victims were authorizing withdrawals. Anthony argues that the victims' debit cards were not forged and so he did not use a forged instrument. However, it is not an essential element of forgery that the instrument used necessarily be forged or inauthentic. Rather, impersonating another so as to use an authentic written instrument belonging to them without authorization is sufficient to prove forgery. *Borjas v. State*, 946 N.E.2d 1230, 1233 (Ind. Ct. App. 2011), *trans. denied*; see also *Green v. State*, 945 N.E.2d 205 (Ind. Ct. App. 2011)).

[12] In *Borjas*, this court held that an individual who attempts to use a credit card belonging to another person, and authenticates that card with a signature

purporting to be the other person, can be convicted of forgery. *Id.* ("we hold that the State presented sufficient evidence that Borjas uttered a written instrument when she signed Hornbeak's name to authenticate the purchases she made using Hornbeak's credit card."). The parties disagree on whether entering a PIN is analogous to signing another person's name to authenticate a credit card. We find no meaningful distinction.

[13] Using a debit card to withdraw money from an ATM is essentially the same as writing oneself a check to cash at the bank. If an individual steals a victim's checkbook, forges the victim's signature, and attempts to cash a check, then the individual is clearly guilty of forgery. The same logic applies to an ATM transaction. Like a signature, a personal identification number is a means by which the bank can attempt to verify a person's identity and assure that they are authorized to access the account. By using the victims' PINs, Anthony was attempting to defraud the bank by purporting to be the victims. We agree with the State that distinguishing ATM transactions as Anthony suggests would allow defendants to avoid criminal liability due to advances in technology.

[14] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.