## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2016, 6:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 30, 2016 <br><br> Court of Appeals Case No. <br> 49A02-1604-CR-738 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable <br> Ronnie Huerta, Commissioner <br><br> Trial Court Cause No. <br> 49G19-1512-CM-43045 |

**Kirsch, Judge.**

[1] Corey Brown ("Brown") appeals his convictions following a bench trial for criminal trespass[1] as a Class A misdemeanor and battery[2] as a Class B misdemeanor. On appeal, Brown challenges the sufficiency of the evidence to support his convictions.

[2] We affirm.

## Facts and Procedural History

[3] In December 2015, Luke Wahlberg ("Wahlberg") was employed at a Rickers Gas Station located in Marion County. As general manager, Wahlberg "had authority to trespass people from the store." *Appellant's Br*. at 5. On December 4, around 10:00 a.m., Wahlberg was working at Rickers when he discovered that Brown, who by that time had been on the premises for about three hours, had just lit a Cigarillo inside the store. Wahlberg asked Brown to take the lit Cigarillo outside. After Brown ignored Wahlberg's request, Wahlberg repeated the command and told Brown to leave the store at least seven or eight times. *Tr*. at 14.

[4] When Wahlberg suggested that Brown "was bumming around," Brown became aggravated and approached Wahlberg in an aggressive manner saying that he worked "hard for what he does" and was just resting in the store. *Id.* at 12, 13. Brown continued to "get more aggressive," and "got in" Wahlberg's face,

---

[1] *See* Ind. Code § 35-43-2-2 (2015).

[2] *See* Ind. Code § 35-42-2-1 (2015).

telling Wahlberg that he did not want to have any problems with Brown. *Id.* Specifically, Brown said, "[Y]ou don't want any drama." *Id.* at 19.

[5] Wahlberg, who was concerned about the safety of other patrons and store associates, pushed Brown several feet toward the front door, while another employee of Rickers called the police. *Id.* at 14, 20. Brown, in turn, grabbed Wahlberg's coat and pushed him around the store, causing Wahlberg to strike several store displays. *Id.* at 14. When Brown eventually lost his grip on Wahlberg, Wahlberg grabbed Brown and was able to shove him out the front door. *Id.* Brown, however, reentered the store and attempted to choke Wahlberg. Wahlberg again pushed Brown outside the store, and there, two customers tackled the men and held Brown to the ground, allowing Wahlberg to get free. *Id.* at 16. The police arrived and took Brown into custody. *Id.* at 25. At that time, Wahlberg told a responding officer that he felt discomfort around his neck. *Id.* at 26.

[6] The State charged Brown with Count I, criminal trespass as a Class A misdemeanor, and Count II, battery as a Class B misdemeanor. A bench trial was held on March 17, 2016. At the close of the State's case, Brown filed a Trial Rule 41(B) motion for involuntary dismissal, which the trial court denied. *Id.* at 31-36. The defense presented no witnesses. Brown rested his case and renewed his motion for involuntary dismissal. *Id.* at 37. The trial court found Brown guilty on both counts and sentenced him to 270 days executed for the

criminal trespass and 180 days executed for the battery, to be served concurrently.  Brown now appeals.[3]  *Id*. at 40.

## Discussion and Decision

[7]  When reviewing the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses.  *Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied*.  We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from that evidence.  *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*.  We also consider conflicting evidence in the light most favorable to the trial court's ruling.  *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*.  The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder.  *Binkley v. State*, 654 N.E.2d 736, 737 (Ind. 2007).  We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012).

---

[3] Brown is not appealing the denial of his Trial Rule 41(B) motion for involuntary dismissal of the charges against him.  Instead, he claims that the evidence was insufficient to support his convictions.  We note, "In a criminal action such as this, a defendant's motion to dismiss pursuant to Trial Rule 41(B) is essentially a test of the sufficiency of the State's evidence."  *Helms v. State*, 926 N.E.2d 511, 515 (Ind. Ct. App. 2010) (quoting another source).  Here, applying either standard, we arrive at the same result.  Accordingly, we follow the parties' lead and evaluate the issues before us as a question of sufficiency of the evidence.

# I. Criminal Trespass

[8] Brown first argues that the State failed to present sufficient evidence to support his conviction for criminal trespass as a Class A misdemeanor. The criminal trespass statute criminalizes several categories of conduct relating to one person's interference with another's property. *Lyles v. State*, 970 N.E.2d 140, 142-43 (Ind. 2012) (citing Ind. Code § 35-43-2-2). Here, Brown was charged under Indiana Code section 35-43-2-2(b)(2); as such, the State had to prove that Brown "(1) knowingly or intentionally (2) refused to leave (3) the real property (4) of another person (5) after having been asked to leave (6) by the person or the person's agent (7) when such defendant lacked contractual interest in the real property." *Id.* (citing I.C. § 35-43-2-2(a)(2)). Neither party disputes that Brown lacked a contractual interest in the Rickers store. Moreover, Brown concedes that: (1) the Rickers store is real property of another; (2) Wahlberg, as general manager, had authority to ask Brown to leave the store; and (3) Wahlberg did ask Brown to leave the store. *Appellant's Br.* at 8. Instead, Brown maintains that he was not given sufficient time to leave the premises and that he was physically prevented from leaving the premises because he was being held either by Wahlberg or customers outside the store. We disagree.

[9] Here, Wahlberg testified that Brown remained on the premises for about three hours without incident. *Tr.* at 11. It was only after Brown lit a Cigarillo inside the store that Wahlberg told him he would have to "take it outside." *Id.* Brown ignored Wahlberg, so Wahlberg repeated his request in a louder voice and told Brown that he "needed to leave the property." *Id.* Wahlberg testified that he

asked Brown to leave the store at least seven or eight times prior to the physical altercation. *Id*. at 14. Brown became aggravated, approached Wahlberg, and said that he works hard for what he does and that he was just resting at the store. *Id*. at 13. Wahlberg testified that Brown "got in his face," "[j]ust pretty much trying to become the aggressor." *Id*. at 12, 13. Brown was screaming at Wahlberg and got close enough to hit his chest against Wahlberg's chest. *Id*. at 19-20. Wahlberg became concerned that he needed to get Brown out of the store for the safety of customers and store associates, so the matter "could be taken care of by police." *Id*. at 20. As Wahlberg pushed Brown toward the front door, Brown did not relent, but instead grabbed Wahlberg's coat and hiked it up over Wahlberg's arms so that Wahlberg could not move his arms. *Id*. at 14. This enabled Brown to push Wahlberg around the store, causing Wahlberg to run into several displays. *Id*. When Brown eventually lost his grip, Wahlberg grabbed Brown and was able to shove him through the store's front door. *Id*. However, Brown did not stay outside; instead, he charged back into the store and started to again attack Wahlberg, attempting to choke him. *Id*. at 16. The probative evidence and reasonable inferences from that evidence allowed a reasonable trier of fact to find that these were not the actions of a man who either needed more time to leave the premises or was prevented from

leaving the premises by other customers.  Sufficient evidence supports Brown's conviction for criminal trespass as a Class A misdemeanor.[4]

## II. Battery

[10] Brown next argues that the State failed to present sufficient evidence to support his conviction for battery as a Class B misdemeanor.  At the time Brown committed the battery, Indiana Code section 35-42-2-l(b), in pertinent part, provided,[5] "[A] person who knowingly or intentionally:  (1) touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor."  Count II alleged that "Brown did knowingly or intentionally touch Luke Wahlberg in a rude, insolent, or angry manner, to-wit: he grabbed his neck."  *Appellant's App.* at 15.

[11] Brown maintains that the record contains no "specific information that at any point of physical encounter with Mr. Wahlberg, [Brown] grabbed Mr. Wahlber[g]'s neck."  *Appellant's Br.* at 10.  We disagree.  Here, Wahlberg

---

[4] In support of his claim that the evidence was insufficient, Brown relies on *Powell v. State*, 45 N.E.3d 480, 482 (Ind. Ct. App. 2015).  *Appellant's Br.* at 9.  We find *Powell* distinguishable.  There, the issue was not whether the defendant refused to leave land owned by a bar after being asked to leave; instead, the issue was whether defendant was standing on land that was actually owned by the bar.  Finding that there was insufficient evidence regarding where defendant was standing when the bar asked him to leave, our court determined that there was insufficient evidence that the bar had authority to demand that defendant leave the land.  *Powell*, 45 N.E.3d at 481-82.  Unlike *Powell*, here, it is clear that Brown was on property owned by Rickers when Wahlberg repeatedly asked Brown to leave and that Wahlberg had the authority to ask Brown to leave the Rickers store.

[5] Brown's battery count was charged under Indiana Code section 35-42-2-l(b).  In 2016, the General Assembly added a new subsection (b) to Indiana Code section 35-42-2-1; therefore, the same definition of battery that was previously is subsection (b) can now be found in Indiana Code section 35-42-2-1(c).  Ind. Pub.L. 65-2016, Sec. 33.

testified that once Wahlberg had succeeded in pushing Brown out of the Rickers store, Brown charged back inside and "attempted to choke" Wahlberg. *Tr.* at 16. Wahlberg was able to prevent Brown from choking him by dropping his chin to keep Brown from obtaining a hold on his neck. *Id.* Wahlberg reported to police that he had discomfort in his neck. *Id.* at 26.

[12]    The task for us, as an appellate tribunal reviewing the sufficiency of the evidence, "is to consider only the probative evidence and reasonable inferences supporting the verdict." *Anthony v. State*, 56 N.E.3d 670, 673 (Ind. Ct. App. 2016), *trans. denied* (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* (quoting *Drane*, 867 N.E.2d at 146). "To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. . . . [a]nd affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* (quoting *Drane*, 867 N.E.2d at 146). We cannot say that it was unreasonable for the trier of fact to believe the testimony presented by the State and conclude that Brown had grabbed Wahlberg's neck. Sufficient evidence supports Brown's conviction for battery as a Class B misdemeanor.[6]

---

[6] In his brief, Brown suggests that any contact he had with Wahlberg constituted self-defense. In support of this argument, Brown cites to no authority and makes just two conclusory statements. Because Brown makes

[13] Affirmed.

May, J., and Crone, J., concur.

no cogent argument to support this suggestion, he has waived the argument. *See* Ind. Appellate Rule 46(A)(8)(a).