FILED

Feb 16 2017, 5:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher A. Neeley,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | February 16, 2017<br><br>Court of Appeals Case No.<br>20A03-1511-CR-1909<br><br>Appeal from the Elkhart Superior<br>Court<br><br>The Honorable Charles C. Wicks,<br>Judge<br><br>Trial Court Cause No.<br>20D05-1408-F6-126 |

**Brown, Judge.**

[1] Christopher A. Neeley appeals his convictions for intimidation as a level 6 felony and resisting law enforcement as a class A misdemeanor. Neeley raises two issues, one of which we find dispositive and revise and restate as whether the trial court abused its discretion in admitting officer testimony. We reverse.

## Facts and Procedural History

[2] On the evening of August 26, 2014, Linda Hooley was traveling to her home along County Road 35 when she observed a man walking on the road. She was concerned because County Road 35 does not have a lot of walkers and it was very foggy that evening. Linda believed that she had seen the same person walk past her home a few times in the past. The walker, later identified as Neeley, caught her attention because he appeared to be walking with "no purpose," in which he proceeded very slowly and was looking at the cars that were passing by him. Transcript at 173. She also thought he looked like a stranger, which caused some alarm. Her husband Brad Hooley arrived home minutes later, Linda brought up the walker to him, and Brad responded that he had observed the walker as well. They decided to call the police.

[3] Officer Cleo Sheppard with the Middlebury Police Department responded to the dispatch, which had posted at approximately 10:00 p.m. The dispatcher told Officer Sheppard that "they did have a couple calls of a peeping Tom . . . and a suspicious person in the area of County Road 22 and 35." *Id.* at 205. Officer Sheppard came upon an individual matching the description walking northbound with traffic on County Road 35, which did not have a shoulder. Noting the "minor traffic infraction" of walking with traffic, Officer Sheppard

engaged with the walker "since this was the subject in question . . . ." *Id.* at 207. Officer Sheppard put his spotlight on Neeley and, using his PA system, told him to stop, but Neeley did not do so. Officer Sheppard exited his vehicle and attempted to stop him, again Neeley did not stop, and Officer Sheppard then returned to his car. Using his PA system Officer Sheppard then again asked Neeley to stop, believed Neeley might jump a fence and run, and he checked on the status of assisting officers.

[4]    After approximately ten minutes, Officer Andrew Ahlersmeyer of the Elkhart County Sheriff's Department arrived to assist from the opposite direction, from which Officer Sheppard advised him to approach and "light the subject up so we can get him to stop." *Id.* at 211. Figuring that Neeley might run, Officer Sheppard "grabbed" Neeley to "detain him." *Id.* at 212-213. Officer Sheppard pulled Neeley's hat upward and recognized him, as Officer Sheppard was familiar with Neeley based on previous encounters with him. While holding Neeley, Officer Sheppard told him to untense his muscles because in his experience an individual could "be setting you up for . . . a sucker punch or anything." *Id.* at 217. Officer Ahlersmeyer grabbed the other side of Neeley. Officer Sheppard asked Neeley where he was going, and Neeley responded "to a friend's house," but Officer Sheppard believed that house was a former residence of his grandparents and was not occupied by someone Neeley currently knew. *Id.* at 218. At some point, Middlebury Police Officer Aaron Smartt also arrived on the scene.

[5] The officers asked Neeley multiple times for a place they could transport him, or, alternatively, for a phone number so they could call his dad or someone else to come and pick him up. About thirteen minutes following Officer Ahlersmeyer's arrival and Neeley's detention, and after being threatened by Officer Sheppard, Neeley told Officer Sheppard: "If you didn't have that vest on I'd f--- you up." Officer Sheppard "took it as that that [Neeley] wants to do something to [him]." *Id.* at 224-225. At about the same time, Officer Sheppard observed that Neeley was still tensing his muscles, raising his arms, and "powering up." *Id.* at 225. The officers then did a pat down for officer safety, and Officer Sheppard had made the decision in his mind that Neeley "was going to jail" if he "couldn't find no where to go . . . ." *Id.* at 226. Neeley also began to directly stare at the officers giving Officer Sheppard "the feeling get ready cause it's going to happen," but he did not believe there was "much of a problem" because at that point there were four officers on the scene. *Id.* at 228. Officer Sheppard believed that Neeley was "powering up again," which would give Neeley "enough strength to forcibly activate himself" to potentially break a hold. *Id.* at 228-229. As the officers placed Neeley under arrest by placing him in handcuffs, Neeley "started to pull away again" or "stiffened up" and "wouldn't . . . put his hands behind his back" before Officer Smartt "took a better grip" and they "were able to secure him and place him in handcuffs . . . ." *Id.* at 229, 308.

[6] On August 28, 2014, the State charged Neeley with intimidation as a level 6 felony and resisting law enforcement as a class A misdemeanor for forcible

resistance. On January 15, 2015, Neeley filed a motion to suppress, asserting that information and evidence obtained from the search "was unlawfully obtained because police lacked authority to stop or search [him] under the 4th Amendment of the U.S. Constitution or Article I, [Section] 11 of the Indiana Constitution." Appellant's Appendix at 54. On May 21, 2015, the court held a hearing on the motion, and on July 21, 2015, it denied Neeley's motion.

[7] On August 13, 2015, the court commenced a jury trial. The court granted Neeley a continuing objection to the testimony of the police officers as fruit of the poisonous tree in that the arrest was "unlawful" and "was made without probable cause" or due process under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Transcript at 143. In granting Neeley's continuing objection, the court instructed Neeley's counsel: "You do not need to be jumping up and down and making continuous objections during the officer's testimony." *Id.* at 144.

[8] During the testimony of Officer Sheppard, the court admitted into evidence a video recording taken by Officer Ahlersmeyer's dash cam depicting Officer Sheppard driving behind Neeley as he walked with traffic and Neeley attempting to walk past Officer Ahlersmeyer's police car. The recording captured audio of the interaction between Neeley while he was being detained by the officers, although the individuals are not shown. In the recording, which was played for the jury, Officer Sheppard can be heard asking Neeley to untense his muscles, and, after asking Neeley where he was headed, Officer Sheppard stated "I'd be damned if I let you hurt me," to which Neeley replied

"I ain't gonna hurt you." State's Exhibit 2 at 6:50-6:59. At one point, Officer Sheppard stated "I'll do the same damn shit again, beat your ass and put you in jail." *Id.* at 7:02-7:07. Officer Sheppard then asked Neeley again where he would like to go or if there was somewhere he could go. After again requesting that Neeley untense his muscles, one of the other officers informed Neeley: "There's three of us and there could potentially be a fourth here with a dog in a minute," that "you're going to get hurt," and that "we don't want to do that." *Id.* at 8:00-8:11. Soon after, one of the officers stated to Neeley: "It's your dad or jail." *Id.* at 10:19-10:21. Officer Sheppard also stated at one point: "Stop, Chris. You know I know that game and I know what you're thinking, so you better stop. I'm tellin' you right now. You do that again, you will kiss the ground. I'm not going to play that." *Id.* at 19:06-19:19.

[9] Regarding the manner in which Officer Sheppard dealt with Neeley as depicted in the video, Officer Sheppard testified: "that is what he understands. That is what he reacts to and thirdly, he knows that I don't play that type of game especially at night like that." Transcript at 222. On cross-examination, Officer Sheppard testified that he did not have a report that Neeley was involved in being a peeping Tom or trespassing and that it was not illegal to walk at night. He also indicated that he "did not see [Neeley] committing any crimes" when he came upon Neeley walking along the roadway. *Id.* at 245. He indicated that he "did not have any articulable suspicion . . . about any criminal activity" on the part of Neeley when he was following Neeley along the road. *Id.* at 248. Officer Sheppard also admitted that he did not bring up the fact that Neeley had

been walking on the wrong side of the street with Neeley during the stop and that it "wasn't a real big deal . . . ." *Id.* at 250. The jury found Neeley guilty as charged.

## *Discussion*

[10] The dispositive issue is whether the trial court abused its discretion in admitting the testimony of the officers regarding the stop. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008); *see also Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (holding that the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider *de novo*).

[11] Neeley notes that his trial counsel's failure to make a contemporaneous objection at the time the evidence was offered at trial may constitute waiver, but

asserts that, waiver notwithstanding, this court should review the issue as if such objection had been made because the court at the outset of trial noted a continuing objection and instructed defense counsel that she need not make contemporaneous objections. Alternatively, he requests we review for a fundamental error. He argues that the encounter quickly turned non-consensual, the police officers did not have reasonable suspicion to detain him for several minutes, that no criminal activity was afoot, and that accordingly the evidence presented by the police officers following the illegal detention should have been excluded under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. The State argues that Neeley waived his claim because he did not object at trial regarding the ground asserted on appeal and does not develop a fundamental error claim, that the officers' stop and detention was supported by reasonable suspicion where Officer Sheppard observed a traffic violation of walking on the wrong side of the roadway and Neeley did not stop when instructed regarding that infraction, and that the stop did not violate the Indiana Constitution.

[12] While Neeley presented his continuing objection at the outset of trial rather than when Officer Sheppard was called as a witness, the record is clear that the trial court, in granting his continuing objection, instructed his counsel that she had preserved the issue and that she need not object to officer testimony as it was being offered. Noting the court's instruction to counsel and our preference to address issues on their merits, we will address Neeley's claim here. *See Armstrong v. State*, 932 N.E.2d 1263, 1270 (Ind. Ct. App. 2010) (noting that the

defendant "could have done a better job advancing his claim of lack of sufficient basis to preserve it for appeal" but that "because we prefer to address issues on their merits where possible, we will address the merits of Armstrong's claim here"), *trans. denied*.

[13] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Carpenter*, 18 N.E.3d at 1001. If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014). It also considers the evidence from the suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial. *Carpenter*, 18 N.E.3d at 1001.

[14] Turning to Neeley's arguments under the Fourth Amendment, it provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[15] Generally, a law enforcement officer must have reasonable suspicion of criminal conduct in order to justify a traffic stop, which is a "seizure" for purposes of the Fourth Amendment. *Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind. 2007) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)). When

determining whether an officer had reasonable suspicion for a *Terry* stop, we consider whether the totality of the circumstances presented a particularized and objective basis for the officer's belief that the subject was engaged in criminal activity. *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014). When an officer, without probable cause to arrest or reasonable suspicion that criminal activity is afoot, approaches an individual, that individual has the right to ignore the police and go about his business. *Florida v. Royer*, 460 U.S. 491, 497-498, 103 S. Ct. 1319, 1324 (1983). "[A] refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387 (1991). Also, "if the person[] refuses to answer and the police take additional steps . . . to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure." *I.N.S. v. Delgado*, 466 U.S. 210, 216-217, 104 S. Ct. 1758, 1763 (1984). In assessing the whole picture, we must examine the facts as known to the officer at the moment of the stop. *Clark v. State*, 994 N.E.2d 252, 264 (Ind. 2013). We review findings of reasonable suspicion *de novo*. *Id.* This is necessarily a fact-sensitive inquiry. *Id.*

[16] Here, Brad Hooley called in a report of a person "acting suspicious," although he "did not state why" the person was suspicious. State's Exhibit 1. At trial, Lisa Hooley testified she previously had seen a person walking on the road during the past several days before but decided to call this time because "[h]e looked questionable and I guess I was tired of seeing him walk on the road."

Transcript at 10. Officer Sheppard responded to the dispatch and, when he came upon Neeley, he engaged him by telling him to stop using his PA system because "this was the subject in question . . . ." *Id.* at 207. Officer Sheppard also observed that Neeley was walking on the right side of the road with traffic rather than against it.

[17] Recently, in *Gaddie v. State*, 10 N.E.3d 1249 (Ind. 2014), the Indiana Supreme Court addressed a person's choice of whether to comply with an officer's request to stop. In that case, defendant Gaddie walked away from an officer through the curtilage of a residence, which turned out to be his own residence, while the officer was ordering him to stop following a disturbance at the residence. 10 N.E.3d at 1252. Gaddie did not stop or change his behavior, and he was charged with resisting law enforcement by fleeing after being ordered to stop. *Id.* On transfer, the Court observed:

> To hold that a citizen may be criminally prosecuted for fleeing after being ordered to stop by a law enforcement officer lacking reasonable suspicion or probable cause to command such an involuntary detention would undermine longstanding search and seizure precedent that establishes the principle that an individual has a right to ignore police and go about his business.

*Id.* at 1254. It held:

> [T]he statutory element "after the officer has . . . ordered the person to stop" must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot.

*Id.* at 1255.

[18] Here, Officer Sheppard was responding to a report of someone "acting suspicious" and at most witnessed Neeley committing an infraction. Neeley did not change his behavior in any way when Officer Sheppard approached him and ordered him to stop, but simply continued to walk along the road in the same direction he had been going. In light of *Gaddie*, Officer Sheppard was mistaken in his assessment that Neeley had committed a misdemeanor in his presence, and he was aware of no other articulable facts that would lead him to reasonably suspect criminal activity was afoot. As Officer Sheppard did not have reasonable suspicion to stop him, Neeley had every right to continue walking notwithstanding Officer Sheppard's order to stop.

[19] To the extent that the State at trial attempted to develop a theory that Officer Sheppard initiated a stop of Neeley because he observed Neeley walking on the wrong side of the road in violation of Ind. Code § 9-21-17-14,[1] that the officers' detention of Neeley was thus lawful, and that during his lawful detention Neeley committed the charged crimes of intimidation and resisting law enforcement, we note that upon the arrival of Officer Ahlersmeyer, Officer Sheppard, who believed that Neeley might run, "grabbed" Neeley to "detain him." Transcript at 212-213. The officers grabbed each side of Neeley and

---

[1] Ind. Code § 9-21-17-14 provides: "If neither a sidewalk nor a shoulder is available, a pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway. If the roadway is two-way, the pedestrian shall walk only on the left side of the roadway." Additionally, Ind. Code § 9-21-17-24 provides that "[a] person who violates this chapter commits a Class C infraction."

engaged in a lengthy discussion regarding places they could transport him or whether someone could arrive to pick him up and remove him from a public throughfare on which he had a right to be. During this exchange, none of the officers ever informed Neeley that he had been stopped for walking on the wrong side of the road. Indeed, Officer Sheppard admitted at trial that he did not bring up the fact that Neeley had been walking on the wrong side of the road with Neeley during the stop and that it "wasn't a real big deal . . . ." *Id.* at 250. We accordingly find this basis unavailing. We conclude that the court abused its discretion when it admitted into evidence the testimony of the arresting officers regarding the events following the unlawful and that Neeley's convictions must be reversed.

[20] Moreover, even if the initial stop was a lawful traffic detention, our analysis would not end there. Ind. Code § 34-28-5-3 governs traffic detentions and provides:

> (a) Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to:

>> (1) inform the person of the allegation;

>> (2) obtain the person's:

>>> (A) name, address, and date of birth; or

>>> (B) driver's license, if in the person's possession; and

(3) allow the person to execute a notice to appear.

[21] We observe that the United States Supreme Court has held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" and that "[a] seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, — – U.S. ——, 135 S. Ct. 1609, 1612 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834 (2005)). In so holding, the Court stated that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 1614.

[22] As noted, after grabbing Neeley the officers discussed with him where they could transport him to remove him from the road. During the interaction, the officers made a number of comments that if Neeley did not help them figure out the best place to transport him they would possibly injure and arrest him. The recording admitted as State's Exhibit 2 shows, and Officer Sheppard confirmed during his testimony, that he and other officers made threatening statements to Neeley for close to thirteen minutes, including statements such as "I'll do the same damn shit again, beat your ass and put you in jail" State's Exhibit 2 at

7:02-7:07, before Neeley appears to make the comment to Officer Sheppard that "If you didn't have that vest on I'd f--- you up."[2] *Id.* at 12:45-13:04.

[23] Again, Ind. Code § 34-28-5-3 gives an officer the authority to detain a person who the officer believes in good faith has committed an infraction for "a time sufficient" to inform the person of the allegation, obtain the person's identification, and allow the person to execute a notice to appear. A stop predicated on a traffic violation becomes an unlawful and unreasonable seizure if it is "prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez*, 135 S. Ct. at 1612 (internal quotations and brackets omitted). We find that, in each instance of charged criminal conduct, such conduct occurred well after the stop had progressed from what would be a lawful traffic detention to an unlawful seizure under the Fourth Amendment. Thus, even if the stop constituted a lawful traffic detention, our conclusion would be the same, that the court abused its discretion in admitting into evidence the relevant officer testimony.[3]

---

[2] The audio is somewhat obscured by a passing automobile at the time of Neeley's comment, but at least some of the comment can be discerned by a review of the recording.

[3] Because we find that the evidence is inadmissible under the Fourth Amendment, we need not address Neeley's arguments related to Article 1, Section 11 of the Indiana Constitution or a second issue raised by Neeley of whether the evidence is sufficient to sustain his convictions.

## *Conclusion*

[24] For the foregoing reasons, we reverse Neeley's convictions for intimidation and resisting law enforcement.

[25] Reversed.


Robb, J., and Mathias, J., concur.